Case 4:21-cv-01153-KGB   Document 11   Filed 02/13/23   Page 1 of 19

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

FEB 13 2023

TAMMY H. DOWNS, CLERK
By: _____ DEP CLERK

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# CENTRAL DIVISION

STEPHANI PELOQUIN                               PLAINTIFF

V.              No. 4:21-CV-01153-KGB-JTR

KILOLO KIJAKAZI, Acting Commissioner,
Social Security Administration                     DEFENDANT

## RECOMMENDED DISPOSITION

This Recommended Disposition (Recommendation) has been sent to United States District Judge Kristine G. Baker. Either party may file written objections to this Recommendation. If objections are filed, they should be specific and should include the factual or legal basis for the objection.

To be considered, objections must be received in the office of the Court Clerk within 14 days of this Recommendation. If no objections are filed, Judge Baker can adopt this Recommendation without independently reviewing the record. By not objecting, parties may also waive the right to appeal questions of fact.

## I. Introduction

On June 12, 2019, Stephani Peloquin ("Peloquin") filed a Title II application for disability insurance benefits. (Tr. at 13). In the application, she alleged disability beginning on February 15, 2016. *Id.* In a written decision dated January 13, 2021, an administrative law judge ("ALJ") denied the application. (Tr. at 13–25). The Appeals Council denied Peloquin's request for review on September 22, 2021. (Tr.

at 1–4). The ALJ's decision now stands as the final decision of the Commissioner, and Peloquin has requested judicial review.

For the reasons stated below, the Court concludes that the Commissioner's decision should be reversed and remanded.

## II. The Commissioner's Decision

At Step One of the required five-step analysis, the ALJ found that Peloquin had not engaged in substantial gainful activity during the period from her alleged onset date of February 15, 2016, through her date last insured of December 31, 2021.[1] (Tr. at 16).

At Step Two, the ALJ determined that Peloquin's fibromyalgia and bipolar disorder were severe impairments. (Tr. at 16).

After finding that Peloquin's impairments did not meet or equal a listed impairment (Tr. at 16-18),[2] the ALJ determined that Peloquin had the residual

---

[1] The ALJ followed the required five-step sequence to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)–(g).

Peloquin acquired sufficient quarters of coverage to remain insured through December 31, 2021. (Tr. at 16). Therefore, the relevant time-period for determination of eligibility for benefits runs from February 15, 2016, through December 31, 2021.

[2] See 20 C.F.R. Part 404, Subpt. P, Appendix 1.

2

functional capacity ("RFC")[3] to perform work at the light exertional level, with additional limitations to work involving no more than occasional interaction with coworkers, and no direct interaction with the public. (Tr. at 18).

At Step Four, the ALJ determined that Peloquin was unable to perform any past relevant work. (Tr. at 23). At Step Five, the ALJ relied upon Vocational Expert ("VE") testimony to find that, based on Peloquin's age, education, work experience and RFC, jobs existed in significant numbers in the national economy that she could perform, including positions such as small products assembler and housekeeper. (Tr. at 24-25). Thus, the ALJ concluded that Peloquin was not disabled. (Tr. at 25).

### III. Discussion

#### A. Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable

---

[3] A claimant's RFC represents the most she can do despite the combined effects of all of her credible limitations and must be based on all credible evidence. *McCoy v. Astrue*, 648 F.3d 605, 614 (8th Cir. 2011). In determining the claimant's RFC, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of their impairments. *Ostronski v. Chater*, 94 F.3d 413, 418 (8th Cir. 1996).

mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> Our review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision. Reversal is not warranted, however, merely because substantial evidence would have supported an opposite decision.

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . 'is more than a mere scintilla.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 59 S. Ct. 206, 217 (1938)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.*

### B. Peloquin's Arguments on Appeal

Peloquin contends that the evidence supporting the ALJ's decision to deny benefits is less than substantial. She argues that the ALJ failed to properly evaluate the opinion of treating specialist Dr. Brian Bradford, which resulted in error in the

RFC determination.[4] *Doc. 9.* The Commissioner responds that the ALJ properly considered the opinions of Dr. Bradford. *Doc. 10.*

### 1. Background

The record establishes Peloquin suffered from severe bipolar disorder with mixed episodes and some psychotic features. (Tr. at 16, 310, 409, 524, 547). She had a history of physical, sexual, psychological, and polysubstance abuse. (Tr. at 16, 546-553).

Peloquin failed to attend her first administrative hearing. She did not answer her phone, respond to her attorney's messages, or provide any notice she would be unable to attend. (Tr. at 32-36).

At the second hearing, Peloquin testified she worked as a nurse until 2011. She stopped working due to mental health symptoms and lost her license in 2016 after a mental health related hospitalization. Peloquin saw a therapist every month for depression and bipolar disorder, and took prescription medications. She noted her medication helped a little. (Tr. at 19, 40-47). Peloquin was taking Topamax, trazodone, sertraline, and prazosin at the time, while Dr. Bradford also noted they were attempting to get her to a proper lithium level. (Tr. at 404).

---

[4] Dr. Bradford's opinions relate exclusively to nonexertional limitations caused by severe mental impairments. (Tr. at 562-566). Peloquin does not argue the ALJ erred in regard to any of the exertional RFC determinations. *Doc. 9.* Substantial evidence in the record supports the ALJ's exertional RFC determinations.

Medical records show diagnoses for depression and bipolar disorder with psychotic features. (Tr. at 310, 409, 524, 547). Treatment records evidence psychiatric symptoms including hallucinations, emotional volatility, difficulty understanding, feeling down, feeling depressive, feeling little interest or pleasure in doing things, nightmares, anger, stress, and suicidal thoughts. (Tr. at 300, 302, 303 308, 320, 397, 406, 432, 506). The treatment records also evidenced times Peloquin denied thoughts of self-harm, hallucinations, and suicidal ideation, her mood was relatively stable, stress and depression were manageable, she was able to concentrate, and medications were working well. (Tr. at 407, 522, 528, 546).

Peloquin's argument on appeal involves only mental, or nonexertional limitations. *Doc. 9*. Medical records establish at least one severe mental impairment that caused limiting symptoms. The record also shows Peloquin was stable and functioned normally at times. In such a case, expert medical opinions are critical to clarifying functional, work-related limitations.

2.  **Medical Opinions**

Peloquin asserts the ALJ failed to adequately explain how he evaluated the medical opinions of record, which resulted in an unsupported RFC determination. Peloquin applied for benefits in 2019, so the ALJ's evaluation is governed by 20

C.F.R. § 404.1520c, which apply to all claims filed after March 27, 2017.[5] Under those regulations, an ALJ focuses on the persuasiveness of a given medical opinion in light of several considerations, including: (1) how well the source supports the opinion with relevant objective medical evidence and supporting explanations; (2) the consistency of the opinion with other evidence in the record; (3) the source's relationship with the claimant; (4) the source's specialization; and (5) other factors. 20 C.F.R. §§ 404.1520c(c). Supportability and consistency are the most important factors, and the ALJ will articulate how he or she considered those factors in the evaluation. *Id.* §§ 404.1520c(b)(2).

The relevant medical opinion evidence at issue concerns mental, or nonexertional limitations.[6] The ALJ considers mental, nonexertional limitations in four areas of functioning: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. (Tr. at 17).

---

[5] For claims filed before that date, the evaluation is governed by 20 C.F.R. §§ 404.1527. Those regulations generally gave more weight to medical opinions from treating sources than the newer regulations do. As the Eighth Circuit has recently acknowledged, "the now-defunct treating physician rule ... no longer applies" to new claims of disability. *Austin v. Kijakazi*, 52 F.4th 723, 730 (8th Cir. 2022).

[6] Nonexertional limitations are "limitations and restrictions imposed by your impairment(s) and related symptoms [that] affect only your ability to meet the demands of jobs other than the strength demands." 20 C.F.R. § 404.1569a(c). Nonexertional limitations or restrictions include difficulty functioning because you are nervous, anxious, or depressed; difficulty maintaining attention or concentrating; and difficulty understanding or remembering detailed instructions. *Id.*

At Steps Two and Three, the ALJ found moderate limitations in Peloquin's ability to interact and mild limitations in all other nonexertional areas. (Tr. at 17-18). When determining RFC, the ALJ found Peloquin's moderate limitations in ability to interact limited her "to work involving no more that occasional interaction with coworkers, and no direct interaction with the public." (Tr. at 18) Substantial medical and opinion evidence supports this finding, and would likely support lesser limitations in this area of functioning.

When determining RFC, other than a limitation in ability to interact, the ALJ found no other limitations in understanding, remembering, or applying information, concentrating, persisting, or maintaining pace, or adapting or managing oneself. (Tr. at 18-23). Substantial evidence in the record does not support the ALJ's finding that Peloquin had no limitation whatsoever in concentrating, persisting, or maintaining pace throughout an 8 hour workday, 5 days a week.[7]

The record contains four medical opinions regarding Peloquin's ability to concentrate, persist, and maintain pace over an 8 hour workday: (1) a nonexamining

---

[7] The ALJ relied on vocational evidence in this case which identified unskilled jobs a hypothetical individual could perform. (Tr. at 24-25, 48-49). By definition, unskilled work provides some limitations in nonexertional functioning. "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 404.1568(a). If the record here supported a finding that Peloquin could perform a full range of unskilled work, then the ALJ's lack of limitations in the RFC would be harmless error. Here, however, substantial evidence in the record does not support a finding Peloquin could perform the full range of work described in the vocational evidence.

records review by Disability Determination Services[8] psychiatric reviewing expert Dr. Brad Williams during initial consideration of Peloquin's disability application (Tr. at 57-63); (2) a nonexamining records review by DDS reviewer Dr. Kevin Santulli during reconsideration of Peloquin's disability application (Tr. at 72-79); (3) a consultative examination by Dr. Kenneth Hobby (Tr. at 351-363); and (4) a medical source statement by treating specialist Dr. Brian Bradford. (Tr. at 561-566).

Dr. Williams found moderate limitations in ability to maintain attention and concentration for extended periods and moderate limitations in ability to complete a normal workday without interruptions from psychologically based symptoms. (Tr. at 62). He noted hallucinations, extreme emotions, and anxiety attacks were generally consistent with the record. (Tr. at 58). Dr. Williams found that Peloquin was limited to unskilled work with simple, direct, and concrete supervision. *Id.* To support this finding, Dr. Williams stated Peloquin "exaggerated her mental complaints and their (sic) are issue of substance abuse." (Tr. at 58).

At the reconsideration level, Dr. Santulli also found moderate limitations in ability to maintain attention and concentration for extended periods and moderate limitations in ability to complete a normal workday without interruptions from psychologically based symptoms. (Tr. at 77-78). He found that Peloquin was limited

---

[8] Social Security Disability applications are initially processed through a network of local Social Security Administration field offices and State agencies (called Disability Determination Services or DDSs).

to unskilled work with simple, direct, and concrete supervision. (Tr. at 73-74). To support this finding, Dr. Santulli also stated Peloquin "exaggerated her mental complaints and their (sic) are issue of substance abuse." (Tr. at 73).

The ALJ credited Dr. Santulli's opinion "only where it is consistent [with the ALJ's findings regarding Peloquin's] ability to interact socially at work."[9] (Tr. at 22). The ALJ rejected the rest of Dr. Santulli's findings.[10] Accordingly, the ALJ did not credit either Dr. Williams's or Dr. Santulli's opinions regarding Peloquin's moderate limitations in ability to maintain attention and concentration for extended periods. (Tr. at 22).

The ALJ also considered Dr. Hobby's single visit consultative examination. (Tr. at 21, 351-363). Dr. Hobby found Peloquin's symptoms were indicative of malingering and substance use. (Tr. at 359). Importantly, Dr. Hobby found that indications of malingering "might have compromised the current findings." (Tr. at 362). Both Dr. Williams's and Dr. Santulli's opinions that Peloquin "exaggerated her mental complaints and their (sic) are issue of substance abuse" relied on Dr. Hobby's report. (Tr. at 58, 73)

---

[9] Dr. Santulli found Peloquin "not significantly limited" in ability to interact appropriately with the general public (Tr. at 78), while the ALJ found limitations to work involving no direct interaction with the public. (Tr. at 18).

[10] The ALJ did not separately analyze Dr. Williams's findings, "noting that Dr. Santulli essentially affirmed Dr. Williams's assessment." (Tr. at 22).

Dr. Hobby found "no significant limitations . . . in [Peloquin's] current capacity to communicate and interact in a socially adequate manner." (Tr. at 361). Regarding ability to sustain concentration, Dr. Hobby noted "no limitations were observed in . . . ability to attend and sustain concentration on basic work-like tasks during this interview, and she did not seem to be giving valid performances on some of the formal tasks." (Tr. at 361). Dr. Hobby found Peloquin could sustain persistence "for at least part of an 8 hour day" and needed refocusing. (Tr. at 355, 361).

The ALJ considered and credited Dr. Hobby's consultative examination findings where consistent with the ALJ's RFC findings, but rejected Dr. Hobby's "relatively vague descriptions of other possible limitations" and noted the issue of validity of the examination due to possible malingering. (Tr. at 21). These rejected "other possible limitations" appear to include that Peloquin "had to be refocused" and could maintain persistence "at least part of an 8 hour day." (Tr. at 355, 361).

Finally, the ALJ evaluated and mostly rejected treating specialist Dr. Bradford's opinions. (Tr. at 22-23). Dr. Bradford noted symptoms including mood disturbance, manic and depressed feelings, anhedonia, sleep disturbance, guilty feelings, difficulty concentrating, hyperactivity, pressured speech, and hallucinations. (Tr. at 563). The ALJ rejected Dr. Bradford's opinions regarding ability to maintain concentration, persistence, and pace. (Tr. at 22).

Dr. Bradford found that Peloquin's ability to sustain concertation, persistence, and pace was seriously limited.[11] (Tr. at 564). Dr. Bradford noted limitations occurred "especially during mania and mixed episodes, [Peloquin] shows significant distractibility and racing thoughts." (Tr. at 564). The ALJ rejected Dr. Bradford's opinion as "not persuasive" and "not consistent." (Tr. at 22).

After reviewing the record, it appears the ALJ rejected every medical opinion that found any limitation in maintaining concentration, persistence, or pace throughout an 8 hour workday, 5 days a week.

First, the ALJ rejected Dr. Williams's and Dr. Santulli's findings for moderate limitations in ability to maintain attention and concentration for extended periods and moderate limitations in ability to complete a normal workday without interruptions from psychologically based symptoms.[12] (Tr. at 22, 62, 77-78). The decision to reject Dr. Williams's and Dr. Santulli's opinions is well supported. These opinions relied almost exclusively on a review of Dr. Hobby's consultative examination. (Tr. at 55-56, 70-71). Dr. Hobby, however, appeared to question the validity of this one time examination due to suspected malingering. He stated that there "were indications of malingering that might have compromised the current

---

[11] Dr. Bradford checked the section on the treating source statement for "markedly limited" which is defined in the same form as "seriously limited." (Tr. at 564).

[12] The ALJ credited Dr. Santulli's opinion "only where it is consistent [with the ALJ's findings regarding Peloquin's] ability to interact socially at work." (Tr. at 22).

12

findings." (Tr. at 362). The opinions also rely on a finding of substance abuse. (Tr. at 58, 73). The ALJ, however, found the medical record established that substance abuse was "non-severe" and "not [a] contributing factor material to the determination." (Tr. at 16).

Next, the ALJ claimed to credit Dr. Hobby's opinion only to the extent of the ability to interact findings.[13] The ALJ rejected Dr. Hobby's "relatively vague descriptions of other possible limitations" including that Peloquin "had to be refocused" and could maintain persistence "at least part of an 8 hour day." (Tr. at 21, 355, 361). The ALJ's decision to reject Dr. Hobby's opinions is also well supported. This was a single visit that resulted in inconsistent findings and questionable validity.

Finally, the ALJ rejected treating specialist Dr. Bradford's medical opinions. This was error to the extent the ALJ found no limitations other than in social interaction. More importantly, the ALJ's rejection of medical opinions resulted in a lack of substantial evidence supporting his finding that Peloquin had no limitations in maintaining concentration, persistence, or pace throughout each and every 8 hour workday, 5 days a week. (Tr. at 17, 20)

---

[13] Dr. Hobby found "no significant limitations . . . in [Peloquin's] current capacity to communicate and interact in a socially adequate manner" (Tr. at 361), while the ALJ found limitations to work involving no more than occasional interaction with coworkers, and no direct interaction with the public. (Tr. at 18).

Dr. Bradford completed his medical source statement on December 10, 2020, a year after Dr. Hobby, Dr. Williams, and Dr. Santulli finished their opinions. (Tr. at 561-566). Dr. Bradford found that Peloquin's ability to sustain concertation, persistence, and pace were seriously limited, "especially during mania and mixed episodes, [Peloquin] shows significant distractibility and racing thoughts." (Tr. at 564). Dr. Bradford also found that Peloquin could maintain attention and concentration for less than 15 minutes before needing redirection, would be off task for 15 percent of the workday, and would miss more than 4 days of work per month due to impairments and/or treatment. (Tr. at 565-566). The ALJ rejected Dr. Bradford's opinions and found his assessment:

> [N]ot persuasive because it is not consistent with his own findings on examination, given the lack of positive findings regarding concentration and attention, with observations including descriptions mood, affect, speech, and judgment issues. In addition, the other objective examinations throughout the medical record do not support Dr. Bradford's assessment, based on the relatively normal to mild findings regarding attention and concentration, despite other findings implicating issues with interacting with others. Further, the undersigned notes that the overall record contained no support to finding any limitations for being off task. (Tr. at 22-23).

An ALJ is not necessarily required to support the RFC assessment with medical opinion evidence. See *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (quoting *Johnson v. Astrue*, 628 F.3d 991, 995 (8th Cir. 2011) ("In the absence of medical opinion evidence, 'medical records prepared by the most relevant treating physicians [can] provide affirmative medical evidence supporting the ALJ's residual

functional capacity findings.'"). Regarding ability to concentrate and persist, the ALJ's decision runs contrary to the credible medical opinion and treatment evidence in this record.

In the absence of credible medical opinion evidence to support the RFC finding for no limitations in concentration, persistence, or pace, the ALJ cited instances when Peloquin exhibited "adequate attention and concentration," normal cognitive functioning, and no hallucinations. (Tr. at 20, 408, 524, 548, 553).[14] Other treatment records evidence times Peloquin denied hallucinations and suicidal ideation, her mood was relatively stable, stress and depression were manageable, she was able to concentrate, and medications were working well. (Tr. at 407, 522, 528, 546). Symptoms that come and go would be normal for even a severe mental health condition. These moments of stability do not provide substantial evidence Peloquin had no mental limitations.

"The very nature of bipolar disorder is that people with the disease experience fluctuations in their symptoms, so any single notation that a patient is feeling better or has had a 'good day' does not imply that the condition has been treated." See *Scott v. Astrue*, 647 F.3d 734, 739–40 (7th Cir. 2011) (ALJ who discredited a treating physician's opinion that a claimant had marked limitations because the claimant

---

[14] The record shows that Peloquin's attention and concentration were adequate for a "solution-focused brief therapy" session conducted over the phone. (Tr. at 548).

"responded well to treatment" reflected a misunderstanding of mental illness and was the result of "cherry-picking"); see also *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) (An ALJ may not cherry-pick inconsistencies between a treating physician's opinion and the record to discount the physician's opinion).

"It is inherent in psychotic illnesses that periods of remission will occur, and that such remission does not mean that the disability has ceased . . . one characteristic of mental illness is the presence of occasional symptom-free periods." *Andler v. Chater*, 100 F.3d 1389, 1393 (8th Cir. 1996) (internal citations and quotations omitted). While the "mere existence of symptom-free periods may negate a finding of disability when a *physical* ailment is alleged, symptom-free intervals do not necessarily compel such a finding when a *mental disorder* is the basis of a claim." *Id.* (emphasis added).

In this case, numerous medical records evidence severely limiting psychiatric symptoms including hallucinations, emotional volatility, difficulty understanding, feeling down, feeling depressive, feeling little interest or pleasure in doing things, nightmares, anger, stress, and suicidal thoughts. (Tr. at 300, 302, 303 308, 320, 397, 406, 432, 506).

Another treating source, APRN Jessica Berry noted Peloquin was "mumbling to herself and dozing off in triage." (Tr. at 503). Peloquin was "fidgety and

appear[ed] distraught." (Tr. at 506). APRN Berry noted hallucinations during at least two separate examinations. (Tr. 300, 506).

Any one of these symptoms, witnessed and credited by multiple treating mental health providers, would be expected to cause some limit in constant concentration, persistence, and pace throughout each 8 hour day, 5 days a week. The ALJ erred by crediting only the records that showed occasional symptom-free periods.

The ALJ also erred by discrediting Peloquin and the medical evidence based on her irregular prescription medication usage. The ALJ found it significant that Peloquin stopped taking her mental health medication even though one record showed she felt her medication had been working very well. (Tr. at 20). The ALJ found:

> [W]hen compliant, the medications have been relatively effective in controlling the claimant's symptoms. However, the record included evidence of medication noncompliance that affected her symptoms. (Tr. at 23).

An ALJ's finding that a claimant knew she needed to take her mental health medication does not resolve the relevant question: whether her failure or even refusal to follow the prescribed treatment was a manifestation of her bipolar disorder. See *Pate-Fires v. Astrue*, 564 F.3d 935, 946 (8th Cir. 2009). When "there is no medical evidence, i.e., a discussion by a doctor or other professional, which indicates [a claimant's] noncompliance at any time was a result of something other than her

mental illness" an ALJ's determination that "medical noncompliance is attributable solely to free will is tantamount to the ALJ 'playing doctor,' a practice forbidden by law." *Id.* at 946–47 (citing references omitted).

The ALJ erred in his consideration of treating specialist Dr. Bradford's medical opinions. The ALJ's error resulted in a lack of substantial evidence supporting his finding that Peloquin had no limitations in maintaining concentration, persistence, or pace throughout each and every 8 hour workday, 5 days a week. The error in determining RFC resulted in deficient vocational evidence at Step Five. (Tr. at 24-25, 48-49). Accordingly, this record does not provide substantial evidence Peloquin could perform any jobs the ALJ used to make the finding of "not disabled." (Tr. at 25).

## IV. Conclusion

The ALJ failed to properly account for moderate limitations with regard to concentration, persistence, or pace. The ALJ's decision is therefore not supported by substantial evidence on the record as a whole. For these reasons, the undersigned magistrate judge recommends REVERSING and REMANDING the decision of the Commissioner with instructions to redetermine Peloquin's RFC with proper limitations relating to maintaining concentration, persistence, and pace throughout each 8 hour workday.

DATED this 13th day of February, 2023.

                                                    UNITED STATES MAGISTRATE JUDGE